IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WILLIAM LLOYD,  )
    Plaintiff,  )
        )
v.  )    No. 1:10cv47
        )
TRAVELERS PROPERTY CASUALTY  )
INSURANCE COMPANY,  )
    Defendant.  )

## MEMORANDUM OPINION

Resolution of this removed diversity declaratory judgment action requires interpretation and application of the Supreme Court of Virginia's recent opinion in *Virginia Farm Bureau Mutual Insurance Co. v. Williams*, 677 S.E.2d 299 (Va. 2009). Specifically, at issue on cross-motions for summary judgment is whether plaintiff is entitled under *Virginia Farm Bureau* to intra-policy stacking of his underinsured motorist ("UIM")[1] coverages despite the clear anti-stacking language contained in his policy documents. An analysis of *Virginia Farm Bureau* and a comparison of the policies in issue there and here foreclose plaintiff's argument. Accordingly, summary judgment must be granted in defendant's favor.

I.[2]

Plaintiff, William Lloyd, is a citizen of Virginia. Defendant, Travelers Property Casualty Insurance Company ("Travelers"), is incorporated and headquartered in Connecticut. At all

---

[1] Certain decisions cited and discussed here also refer to uninsured motorist ("UM") coverage. The distinction between UM and UIM coverage is not material to the disposition of the cross-motions at bar, and indeed the Fourth Circuit has held that Virginia law "treats the two as one." *Kiernan v. Agency Rent A Car, Inc.*, 940 F.2d 917, 919 (4th Cir. 1991).

[2] The facts recited herein are derived from the pleadings and the record taken as a whole, and are not materially disputed.

times relevant to this litigation, plaintiff's seven automobiles were insured by two policies issued by Travelers, one policy covering three of plaintiff's vehicles and the other covering the remaining four. Apart from the number of vehicles insured, the policies are identical in all relevant respects. Each policy is comprised of a policy agreement and a declarations page.

Pertinent here are two policy provisions. First, each policy agreement contains a "limit of liability" section that states, and is formatted, as follows:

> The limit of Bodily Injury Liability shown in the Declarations for each person or Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> The limit of Property Damage Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. "Insureds";
>
> 2. Claims made; or
>
> 3. Vehicles or premiums shown in the Declarations.

Compl. Ex. A at 9. The final paragraph beginning with the words, "[t]his is the most we will pay," is the purported anti-stacking language at issue here. The policy agreements do not contain any specific numerical coverages; rather, a schedule listing the applicable coverages is contained in a declarations page. Here, the declarations pages limit uninsured and underinsured motorists

bodily injury coverage to "$250,000 each person,"[3] and list a separate premium for each of the seven insured vehicles. The declarations pages do not contain anti-stacking clauses.

This declaratory judgment action—and a related Fairfax County Circuit Court civil suit—arise from a car accident in Manassas, Virginia, on November 16, 2007. On that date, plaintiff was driving his 1996 Dodge Caravan on Dumfries Road, a major thoroughfare. Bryan Royal, an employee of Cutting Edge Landscaping LLC and/or Cutting Edge Lawn Care LLC, was driving his employer's Ford F-350 pickup truck on Crossbow Drive, a small side street, at its intersection with Dumfries Road. Plaintiff alleges that Royal negligently "ran" a stop sign and collided with plaintiff's vehicle in the intersection, resulting in a "debilitating traumatic brain injury" to plaintiff. Accordingly, in the state court action, plaintiff seeks damages from Royal, from Royal's alleged employers, and from other alleged tortfeasors.[4]

Plaintiff believes that his damages are ultimately significantly higher than the alleged tortfeasors' liability coverage, and thus he also seeks to recover damages through the UIM coverage of his Travelers policies. To that end, plaintiff sought confirmation from Travelers that his two policies provided him with a total of $1.75 million in UIM coverage, a figure arrived at

---

[3] Although one of the policies originally listed the coverage limit at $25,000 rather than $250,000, the parties agree and stipulate that the coverage is in fact $250,000 for all seven vehicles, as required by Virginia law. *See* Va. Code § 38.2-2206(A) (mandating that UM/UIM policy limits "shall equal but not exceed the limits of the liability insurance provided by the policy," absent an insured's rejection).

[4] All of the state court defendants—namely Royal, Cutting Edge Landscape LLC, Cutting Edge Lawn Care LLC, Classic Springs LLC, Prince William Construction L.L.C., and Prince William Construction Company—were initially named as defendants in this action. Yet, they were dismissed by Order dated May 20, 2010, as they are not real parties in interest in this matter, which is nothing more or less than a coverage dispute between an insurer and its insured. *See Lloyd v. Travelers Prop. Cas. Ins. Co.*, No. 1:10cv47 (E.D. Va. May 20, 2010) (Order).

by stacking the seven $250,000 UIM coverages. Because Travelers did not respond, plaintiff brought this declaratory judgment action.

There is no dispute that plaintiff is entitled to UIM coverage in connection with the car accident. And moreover, the parties correctly agree that plaintiff is entitled to *inter*-policy stacking—that is, stacking *between* policies—of the UIM coverages provided by each of his two Travelers policies.[5] The parties disagree, however, as to whether the Supreme Court of Virginia's recent decision in *Virginia Farm Bureau* requires *intra*-policy stacking, that is, stacking of UIM coverages *within* a single policy. If, on the one hand, intra-policy stacking is permissible here, plaintiff would be entitled to stack first the $250,000 UIM coverages within each policy for a total of $1 million on one policy and $750,000 on the other, and thereafter stack these two policies together for a combined total of $1.75 million in UIM coverage. Yet if, on the other hand, the policies preclude intra-policy stacking, each policy would provide $250,000 in UIM coverage, for a combined total of $500,000 in UIM coverage.

The parties fully briefed and argued the issue at a July 2, 2010 hearing, following which the parties' cross-motions for summary judgment were taken under advisement. Accordingly, the matter is ripe for disposition.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.

---

[5] *See USAA Cas. Ins. Co. v. Alexander*, 445 S.E.2d 145, 148 (Va. 1994) ("In the case of multiple policies, each providing for UM coverage, the language of Code § 38.2-2206(B) mandates stacking of the UM coverage provided under the separate policies.").

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this case, the parties agree that no material facts are in dispute. Instead, the parties' disagreement focuses sharply on whether Virginia law requires intra-policy stacking of plaintiff's UIM coverages, a legal question appropriately resolved on summary judgment. *See Transcontinental Ins. Co. v. RBMV, Inc.*, 551 S.E.2d 313, 317 (Va. 2001) ("[I]nterpretation of the provisions of an insurance contract presents a question of law . . . .").

### III.

### A.

Well-established principles of Virginia law concerning the interpretation of insurance policies govern this case.[6] To begin with, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220, 224 (Va. 2010) (quoting *Seals v. Erie Ins. Exch.*, 674 S.E.2d 860, 862 (Va. 2009) (alteration in original)). Where the parties dispute an unambiguous policy term, the term is construed according to its plain meaning, without regard to whether the construction favors or disfavors coverage. *See Va. Farm Bureau Mut. Ins. Co. v. Gile*, 524 S.E.2d 642, 645 (Va. 2000). Yet, where the parties dispute an ambiguous policy term, such that it can understood to have more than one meaning, the term is

---

[6] As a threshold matter, it is worth noting that the parties correctly agree that Virginia law applies under the principles set forth in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). Specifically, *Klaxon* instructs a federal court sitting in diversity to apply the choice of law rules of the forum state—here, Virginia—and in this respect "Virginia insurance law applies 'the law of the place where an insurance contract is written and delivered.'" *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (quoting *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993)). In this case, Virginia law applies because Travelers wrote and delivered the insurance policies to plaintiff in Virginia.

construed in favor of coverage, thereby benefitting the insured. *See Seals*, 674 S.E.2d at 862; *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 316 S.E.2d 734, 736 (Va. 1984) ("Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders."); *see also Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423 (4th Cir. 2008) ("The basic contract law principle *contra proferentem* counsels that a court construe any ambiguities in the contract against its draftsman."). From this, it follows that "[w]hen an insurer drafts policy language setting forth exclusions that limit coverage under a policy, the insurer is required to use language that clearly and unambiguously defines the scope of the exclusions." *Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 331 (Va. 2000).

Virginia decisions concerning stacking of UIM coverages faithfully reflect the requirement that policy exclusions limiting coverage must be clear and unambiguous. For instance, in a pair of cases decided on the same day, the Supreme Court of Virginia in 1972, relying on a Supreme Court of Kansas decision, held that, absent a clear and unambiguous disclaimer, insureds were permitted to stack multiple UM coverages within a single policy that listed multiple vehicles separately and charged an equal premium for each vehicle. *See Cunningham v. Ins. Co. of N. Am.*, 189 S.E.2d 832 (Va. 1972) (adopting rationale of *Sturdy v. Allied Mut. Ins. Co.*, 457 P.2d 34 (Kan. 1969)); *Lipscombe v. Sec. Ins. Co.*, 189 S.E.2d 320 (Va. 1972) ("The *Sturdy* thesis, which we have adopted, is that it takes 'plain, unmistakable language' to prevent 'stacking' in this type case [sic]."). Accordingly, "[w]ith the adoption of the principle espoused in *Sturdy*, it is now the rule in Virginia that the stacking of UM coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Goodville Mut. Cas. Co. v. Borror*, 275 S.E.2d 625, 627 (Va. 1981).

**B.**

Whether the Travelers policies issued to plaintiff clearly and unambiguously preclude intra-policy stacking of UIM coverages is therefore the central issue presented here. In this regard, two Supreme Court of Virginia decisions are of particular import.

The first, *Goodville Mutual Casualty Co. v. Borror*, 275 S.E.2d 625 (Va. 1981), concerned an insurance policy covering two vehicles—each at "$25,000 each person"—and charging two separate, unequal premiums. Following a car accident, the insurer filed a declaratory judgment action to clarify that the following policy provision—which is similar to that contained in the Travelers policies—clearly and unambiguously precluded intra-policy stacking:

> *Regardless of the number of . . . motor vehicles to which this insurance applies,*
> (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident. [Emphasis added.]

*Id.* at 627 (alterations in original). The Supreme Court of Virginia agreed, holding as a matter of law "that the language of Goodville's policy, *viz.*, '[r]egardless of the number of . . . motor vehicles to which this insurance applies,' is clear and unambiguous and requires the construction that stacking is not permissible." *Id.* at 628 (alteration in original). Significantly, no ambiguity was created by the fact that two vehicles were insured and that two separate premiums were charged, given the clear and unambiguous anti-stacking limitation. *See id.*

More recently, the Supreme Court of Virginia distinguished *Goodville* in *Virginia Farm*

*Bureau*. There, the plaintiff was involved in a car accident with an underinsured motorist, thus triggering the UIM provisions of a policy under which three vehicles were insured, although none of the three vehicles were involved in the accident.[7] Notably, the *Virginia Farm Bureau* policy agreement contained a "limits on liability" section with language identical to the *Goodville* anti-stacking clause, namely "[r]egardless of the number of . . . motor vehicles to which this insurance applies." 677 S.E.2d at 300-01. Moreover, the policy agreement itself contained no specific numerical coverages, but instead made reference to an attached declarations page. The declarations page, in turn, listed one premium paid for a vehicle having UIM bodily injury coverage of "$250,000 each person," and two additional premiums for vehicles having UIM bodily injury coverage of "$300,000 each person." The plaintiff filed suit, seeking a declaration that the coverages could be stacked for a total of $850,000 UIM coverage. In response, Virginia Farm Bureau argued that the maximum potential UIM coverage was $300,000 because the policy clearly and unambiguously prohibited intra-policy stacking.

Although the Goodville and Virginia Farm Bureau policies contained identical anti-stacking clauses, the Supreme Court of Virginia held that the Virginia Farm Bureau anti-stacking clause, when read in the context of the entire policy, did not clearly and unambiguously prohibit intra-policy stacking. *See id.* at 303 ("[T]hat similarity must be considered in the context of the other policy language."). Specifically, the Supreme Court of Virginia reasoned that the different sets of UIM coverage—namely the single $250,000 UIM coverage and the two $300,000 UIM

---

[7] It is worth noting that UIM coverage applies regardless of whether the vehicle involved in the accident is insured under the policy at issue. *See Lipscombe*, 189 S.E.2d at 322-23 ("Uninsured motorist coverage is designed to protect not vehicles, but persons . . . . [An insured] is protected while occupying an insured vehicle *or otherwise*.").

coverages—cast the anti-stacking clause into doubt in two respects. First, the different coverages "le[ft] unresolved the question whether all three separate limits for 'each person' apply." *Id.* And second, if all three separate limits did not apply, still unclear was "which of the single separate limits for 'each person' [would be] applicable." *Id.* Accordingly, the "disparity in the stated limits of liability for 'each person' manifest[ed] an ambiguity regarding the extent of total coverage for 'each person' under the policy." *Id.* And given this ambiguity, the Supreme Court of Virginia required intra-policy stacking and hence declared that the plaintiff was entitled to $850,000 in UIM coverage.

It is worth emphasizing that the Supreme Court of Virginia identified "the different sets of coverage" as the only ambiguity in the policy. *Id.* To be sure, the decision noted that the Goodville policy differed from the Virginia Farm Bureau policy in that the Goodville UM coverage schedule was placed in close proximity to the anti-stacking clause, while the Virginia Farm Bureau policy placed the anti-stacking language in the policy agreement and listed separately the UIM coverages in the declarations page. *See id.* (comparing policy provisions from two cases). Yet, these differences were *dicta* and not material to the disposition of the case, as they played no part in the holding. Instead, the Supreme Court of Virginia focused solely on the "disparity in the stated limits of liability" in finding the policy to be ambiguous with respect to intra-policy stacking. *See id.* Notably, the only court to have interpreted *Virginia Farm Bureau* reaches the same conclusion:

> the use of a declarations page was not identified as an ambiguity by the Supreme Court in *Virginia Farm Bureau*. As discussed above, the ambiguities identified there were the disparity of the policy coverages contained on the declarations page and a lack of instruction as to which limit or how many limits applied. Had the Supreme Court considered the use of a declarations page itself to be an ambiguity,

it would have stated so in clear and specific terms as it identified the other ambiguities that were present in the policy.

*Salzman v. Kanchev*, No. CL09-1566, slip op. at 7-8 (Va. Cir. Ct. Feb. 4, 2010).

With this in mind, it is equally worth emphasizing the structure of the analysis in *Virginia Farm Bureau*. The Supreme Court of Virginia, consistent with *Goodville* and ample other authority, began with the general principle that courts must "construe ambiguous policy language purporting to exclude certain occurrences from coverage most strongly against the insurer," and that specifically with respect to stacking "any ambiguity regarding the stacking of coverage within a policy will be construed against the insurer." 677 S.E.2d at 302. The central question presented, therefore, was whether the policy provisions, when read *in pari materia*, clearly and unambiguously prohibited intra-policy stacking. In the circumstances, the anti-stacking clause could not be applied clearly and unambiguously because the declarations page contained one UIM coverage for $250,000 and two additional UIM coverages for $300,000. In other words, although the policy contained an express prohibition sufficient to prohibit intra-policy stacking, the policy was nonetheless ambiguous as to whether the $250,000 or $300,000 UIM coverages applied. Neither *Goodville* nor the instant case present such an ambiguity. Given this, the longstanding principle requiring ambiguities to be construed in favor of the insured compelled the conclusion in *Virginia Farm Bureau* that intra-policy stacking was not clearly and unambiguously precluded.

In sum, *Goodville* stands for the proposition that the clause, "[r]egardless of the number of . . . motor vehicles to which this insurance applies," clearly and unambiguously prohibits intra-policy stacking of UIM coverages as a matter of law. *Goodville*, 275 S.E.2d at 628 (alterations in

original). This rule is qualified, however, by *Virginia Farm Bureau*, which instructs courts interpreting insurance policies to "consider[] . . . the context of the other policy language." *Va. Farm Bureau*, 677 S.E.2d at 303. That *Virginia Farm Bureau* neither explicitly nor implicitly overrules *Goodville* is made clear by the Supreme Court of Virginia's statement that ambiguity arose only when the "different sets of coverage . . . [were] *considered along with* the 'anti-stacking' language." *Id.* (emphasis added). Thus, where the anti-stacking clause is itself ambiguous, or cannot be applied clearly and unambiguously, intra-policy stacking is required because the policy must be construed in favor of the insured. Yet, where the anti-stacking clause is clear and unambiguous, and can also be applied clearly and unambiguously, the prohibition on stacking must be given effect. *See Gile*, 524 S.E.2d at 645 ("If a term in a policy is ambiguous, we construe the term in favor of coverage. . . . However, if the disputed policy language is unambiguous, we apply its terms as written.").

C.

These principles, applied here, compel the conclusion that the Travelers policies issued to plaintiff fit squarely within the *Goodville* rationale and are distinguishable from the Virginia Farm Bureau policy, and thus from the *Virginia Farm Bureau* rationale. To begin with, the Travelers policies contain a clear and unambiguous prohibition against intra-policy stacking, namely "[t]his is the most we will pay regardless of the number of . . . [v]ehicles or premiums shown in the Declarations." Compl. Ex. A at 9. This clause is not materially different from the clause held to prohibit stacking as a matter of law in *Goodville*. *See* 275 S.E.2d at 628 ("[T]he language of Goodville's policy, *viz.*, '[r]egardless of the number of . . . motor vehicles to which this insurance applies,' is clear and unambiguous and requires the construction that stacking is

-11-

not permissible."). Moreover, the Travelers policies contain seven identical UIM coverages for "$250,000 each person," one for each vehicle insured. Accordingly, this case, like *Goodville*, does not present a situation in which a "disparity in the stated limits of liability for 'each person' manifests an ambiguity regarding the extent of total coverage for 'each person' under the policy." *Va. Farm Burea*, 677 S.E.2d at 303. To the contrary, the anti-stacking clause can be clearly and unambiguously applied because the only applicable UIM coverage is $250,000. Simply put, no ambiguity exists in the Travelers policies, and hence the anti-stacking clause must be applied, as written. *See Gile*, 524 S.E.2d at 645. Therefore, each of the Travelers policies issued to plaintiff provides $250,000 in UIM coverage, and because plaintiff is permitted to stack the two policies' coverages together (*i.e.*, *inter*-policy stacking), plaintiff is entitled to $500,000 in UIM coverage.[8]

In response, plaintiff makes three unpersuasive arguments. First, plaintiff argues that a clause found in the declarations pages—"[i]nsurance is provided only where a premium is shown for the coverage"—authorizes intra-policy stacking. Yet, this clause neither bears on the permissibility of stacking, nor renders the anti-stacking clause ambiguous, thereby requiring a construction in favor of coverage. Indeed, it is notable that the policies at issue in *Goodville* and *Virginia Farm Bureau* contained similar, if not identical, language regarding premiums. Yet (i) *Goodville* held the anti-stacking clause to be clear and unambiguous as a matter of law, and (ii) *Virginia Farm Bureau* did not identify this as creating an ambiguity. Accordingly, the presence or absence of a clause concerning premiums does not affect the analysis here.

---

[8] Defendant notes that "Mr. Lloyd's entitlement to UIM coverage is also predicated on him obtaining a judgment for damages in excess of the tortfeasors' available insurance, which has not happened yet." This Memorandum Opinion neither addresses nor decides whether, and to what extent, the $500,000 UIM coverage provided by the Travelers policies must be offset by the state court defendants' liability coverage.

Second, plaintiff contends that two factors support the conclusion that the Travelers anti-stacking clause applies only to property damage, and not to bodily injury: (i) the placement of the anti-stacking clause directly after the paragraph limiting property damage, but not after the paragraph limiting bodily injury; and (ii) the use of the word "this" at the beginning of the anti-stacking clause. These arguments are unpersuasive. It is clear that the clause in the Travelers policies, "[t]his is the most we will pay regardless of the number of... [v]ehicles or premiums shown in the Declarations,"[9] when read in context, refers to both bodily injury and property damage. Plaintiff's attempt to demonstrate otherwise by citing inapposite decisions defining the words "this" and "these," and opining on the rules of grammar, inflexibly applies technical rules of contract construction to an unambiguous insurance policy provision, while ignoring the context in which these clauses appear. *See Quadros & Assocs., P.C. v. City of Hampton*, 597 S.E.2d 90, 94 (Va. 2004) ("We consider the contract as a whole and do not place emphasis on isolated terms.").

Third, plaintiff argues that *Virginia Farm Bureau* (i) effectively overruled *Goodville*'s holding that the anti-stacking clause at issue in those cases clearly and unambiguously prohibited stacking as a matter of law, and (ii) sets forth the more stringent rule that the anti-stacking clause and the schedule listing the UIM coverages appear in close proximity to one another. These arguments misunderstand the *Virginia Farm Bureau* decision. To begin with, as discussed *supra*, *Virginia Farm Bureau* neither explicitly nor implicitly overrules *Goodville*; rather, *Virginia Farm Bureau* simply states that an otherwise valid anti-stacking clause is rendered ambiguous where, unlike here, application of the anti-stacking clause leads to an unclear result.

---

[9] Compl. Ex. A at 9.

*See Va. Farm Bureau*, 677 S.E.2d at 303 (holding that anti-stacking language becomes ambiguous in light of different sets of coverage). In addition, although the Supreme Court of Virginia in *Virginia Farm Bureau* noted that the Goodville policy placed the anti-stacking language in close proximity to the schedule of coverages, as compared to placing the anti-stacking language in the policy agreement and the schedule of coverages in a declarations page, this observation was peripheral to the court's holding. *See id.* (focusing on "disparity in the stated limits of liability for 'each person'") Significantly, *Virginia Farm Bureau* did not hold that the separation of these provisions created an ambiguity as to stacking. *See Salzman*, No. CL09-1566, slip op. at 7-8 ("Had the Supreme Court considered the use of a declarations page itself to be an ambiguity, it would have stated so in clear and specific terms as it identified the other ambiguities that were present in the policy."). Simply put, plaintiff's argument incorrectly stretches the holding of *Virginia Farm Bureau* to include factual observations that were simply stated in *dicta*. Finally, plaintiff's argument is squarely at odds with the well-settled principle under Virginia law that "[i]n ascertaining the parties' intention regarding specific contract provisions, [a court must] consider the document as a whole." *Pocahontas Mining LLC v. CNX Gas Co., LLC,* 666 S.E.2d 527, 531 (Va. 2008). Indeed, *Virginia Farm Bureau* itself instructs courts to consider anti-stacking clauses "in the context of the other policy language." 677 S.E.2d at 303. Thus, in this case the anti-stacking clauses cannot be interpreted in isolation; rather, they must be read in conjunction with the declarations pages, which are expressly cross-referenced in the anti-stacking clauses. *See* Compl. Ex. A at 9 ("This is the most we will pay regardless of the number of . . . [v]ehicles or premiums shown *in the Declarations*." (emphasis added)). For these reasons, the separate placement of the anti-stacking clauses from the UIM coverage schedules

creates no ambiguity here.

## IV.

In sum, it is well-settled "in Virginia that the stacking of UM coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Goodville*, 275 S.E.2d at 627. Although under *Goodville* the inclusion of the clause, "[r]egardless of the number of . . . motor vehicles to which this insurance applies," clearly and unambiguously prohibits intra-policy stacking, *Virginia Farm Bureau* instructs courts interpreting insurance policies to consider whether an otherwise valid anti-stacking clause is rendered ambiguous through its application. As no such ambiguity is present in the Travelers policies issued to plaintiff, the anti-stacking clause contained therein must be given its full effect. Accordingly, because plaintiff is not entitled to stack the UIM coverages within each of the two policies, UIM coverage is limited to $250,000 for each policy, resulting in a combined total of $500,000 in UIM coverage.

An appropriate Order shall issue.

Alexandria, Virginia
July 22, 2010

```
                                    _____
                                    T. S. Ellis, III
                                    United States District Judge
```